CHEUNG SUM SHEE ET AL. *v.* NAGLE, COMMISSIONER OF IMMIGRATION.

ON CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 769. Argued April 17, 20, 1925.—Decided May 25, 1925.

1. Alien Chinese wives and minor children, of Chinese merchants lawfully domiciled in the United States, are not mandatorily excluded from admission by the Immigration Act of 1924, which provides that "no alien ineligible to citizenship shall be admitted to the United States unless such alien is . . . not an immigrant, as defined in Section 3", and in that section classifies as a non-immigrant "an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provisions of a present existing treaty of commerce and navigation." P. 344.

2. Such wives and children were guaranteed the right of entry by the Treaty of 1880. *United States* v. *Mrs. Gue Lim,* 176 U. S. 459. *Id.*

3. The Act of 1924 should be construed with a view to preserving this treaty right; and the legislative history and general terms of the act permit this. P. 345.

4. Such aliens, being in effect specified by the act itself as "non-immigrants", are not barred by § 5, which declares that an alien not particularly specified in the act as a non-quota immigrant or non-immigrant shall not be admitted as such "by reason of rela-

tionship to any individual who is so specified or by reason of being excepted from the operation of any other law regulating or forbidding immigration." P. 346.

QUESTION certified by the Circuit Court of Appeals, arising on the review of a decision of the District Court, (2 Fed. (2d) 995,) which refused relief by *habeas corpus* to Chinese aliens held for deportation by the immigration authorities.

*Mr. Frederick D. McKenney* and *Mr. George A. McGowan,* with whom *Messrs. John L. McNab, Jackson H. Ralston, Roger O'Donnell, George W. Hott, W. J. Peters, M. Walton Henry, J. P. Fallon, O. P. Stidger, W. G. Becktell,* and *Gaston Straus* were on the brief, for appellants.

*Mr. Assistant Attorney General Donovan,* with whom the *Solicitor General* was on the brief, for appellee.

There is a difference of opinion between the two departments of the Government which are directly concerned with the administration of the Act. The Department of Labor is of opinion that the Act requires the exclusion of these appellants. The Department of State is of opinion that the Act and the Treaty together require their admission. In view of the importance of this case, counsel for the Government feel it their duty to submit reasons in support of both opinions. Accordingly, in their brief is set forth the reasoning in support of the exclusion theory maintained by the Department of Labor; in an appendix, the opposing arguments of the State Department, as embodied in a memorandum prepared by the Solicitor for that Department. The appellants are clearly " aliens ineligible to citizenship." They are therefore excluded by § 13(c) of the Act, unless they can establish their right to enter as " treaty merchants" under § 3(6). Section 3(6) grants

admission to " an alien entitled to enter the United States. solely to carry on trade under and in pursuance of the provisions of a present existing treaty of commerce and navigation." Can. it be said that the wife or the minor child of a merchant.comes here " solely to carry on trade "? The agent of a merchant is not himself entitled to enter as a merchant. *Tulsidas* v. *Insular Collector,* 262 U. S. 258. And this Court in the *Gue Lim Case* did not hold that the wife of a merchant was entitled to enter " solely to carry on trade," but merely decided that she was entitled to enter solely to reside with her husband, as she then had the right to do. The purpose of § 3(6) was to take away that right by granting the right of entry only to actual merchants, and not, as formerly, to merchants and their families. Any other construction would deprive the section of its meaning. At the time when the *Gue Lim* decision was rendered, no statutory definition existed of the term " merchant "; and the Court accordingly construed the language of the treaty as including both merchants and their families. The Court might have decided the *Gue Lim Case* differently had § 3(6) then been in existence. It was inserted at the request of the Secretary of State, for the purpose of safeguarding treaty rights, but in its final form is very different from the provision which the Secretary originally suggested; and it is possible that the effect of the alteration is to exclude the wives and children of merchants. Whatever might have been the result had Congress enacted, *totidem verbis,* either of the Secretary's suggestions, it is submitted that the case must be judged upon the law as it is written. The Committee Report indicates that Congress intended to " tie the exemptions to those persons properly exempted and entitled to enter the United States solely to carry on trade under and in pursuance of all existing treaties of commerce and navigation." The effect of § 3(6), as actually passed by Congress, may be to deny the right of

entry to all who do not come here "solely to carry on trade." In opposition to this view counsel cite the case of *Anderson* v. *Watt,* 138 U. S. 694, 706, and other cases holding that the domicil of the husband is the domicil of the wife, and that the identity of the wife is, in a sense, merged in that of the husband. But has not this theory lost much of its force since the enactment of the Act of September 22, 1922, c. 411, 42 Stat. 1021, under which the citizenship of the wife no longer follows that of the husband? And the Immigration Acts often operate to prevent husband and wife from residing together in this country. Yet this Court, when appealed to on the ground of hardship, has declined to interfere. *Commisisoner of Immigration* v. *Gottlieb,* 265 U. S. 310; *Chung Fook* v. *White,* 264 U. S. 443; *Yee Won* v. *White,* 256 U. S. 399.

In the next place § 5 of the Act provides "An alien who is not particularly specified in this Act as a non-quota immigrant or a non-immigrant shall not be admitted as a non-quota immigrant or a non-immigrant by reason of relationship to any individual who is so specified or by reason of being excepted from the operation of any other law regulating or forbidding immigration." It may well be that the appellants have no right of entry in and of themselves; their right of entry is dependent, not upon their own status, but upon that of their husbands or fathers. And if that is so, then they are excluded by the operation of § 5. Congress has been careful to grant admission to the families of Chinese government officials § 3(1), and to the families of Chinese clergymen or professors §§ 4(d), 13(c) (2); and from this fact it may be inferred that Congress did not intend to grant admission to the families of Chinese merchants, according to the maxim *expressio unius.* *Lapina* v. *Williams,* 232 U. S. 78, 92; *United States* v. *Goldenberg,* 168 U. S. 95, 103. It is conceded that a strong presumption exists in favor of maintaining treaty rights. The right of these appellants

to enter this country is a right conferred, if not by the
letter of the treaty, at least by the treaty as interpreted
by this Court.  But it is submitted that even treaty rights
can not prevail against the language of the Immigration
Act of 1924.  And under §§ 5 and 13(c) of that Act, it is
doubtful whether these appellants can enter.

Such is the contention of the Department of Labor;
but this Court should also consider the careful and well-
reasoned opinion of the Solicitor for the Department of
State, before answering the question.

The following is excerpted from a memorandum by
*Hon. Charles Cheney Hyde,* Solicitor for the State De-
partment, which was appended to the brief of appellee:

Wives and minor children of alien merchants entering
the United States for purposes of trade and commerce
under a present existing treaty of the United States are
themselves clothed with a treaty right to enter.  The
courts of the United States, when interpreting the treaties
of their country, act on the assumption that it was the
design of the contracting parties not to contravene prin-
ciples of morality and fairness, *Ubeda* v. *Zialcita,* 226
U. S. 452, 454; that their agreement should be interpreted
" in a spirit of *uberrima fides,* and in a manner to carry
out its manifest purpose," *Tucker* v. *Alexandroff,* 183
U. S. 424, 437; and that its terms should be liberally
construed, *Asakura* v. *Seattle,* 265 U. S. 332, 342; *Haun-
stein* v. *Lynham,* 100 U. S. 483; *Geofroy* v. *Riggs,* 133
U. S. 258; *Tucker* v. *Alexandroff, supra.*

The commercial treaties of the United States providing
for the entrance and residence of nationals of one con-
tracting party into the territories of the other for the
purposes of trade have not made mention of the wives
and minor children of such individuals.  It seems to have
been taken for granted that there is such unity of interest
in the individual family that the head thereof, if given

the right to enter a country for purposes of trade, is the representative of an entity embracing his wife and chil-dren who are not to be dissociated from him. This conclusion is fortified by the fact that treaties with Japan, China, and other countries contemplate prolonged and undetermined residence for the purposes of trade, the occupation of dwellings, and by necessary inference the establishment of homes. [Citing treaties.]

It would scarcely be suggested that each of these treaties should be interpreted differently in accordance with the exact words used. Such literal construction could not give effect to the intent of the contracting parties, nor could it avail to carry out the general purposes for which such treaties are concluded. It is believed that the varying terms of all these treaties may be properly paraphrased thus: "The contracting parties agree that their citizens and subjects, respectively, shall have a right to come into the territories of the other for the purpose of carrying on international trade, and they are accorded the privilege of remaining indefinitely in the country, of establishing their homes and of bringing with them for this purpose the members of their families so long as they are here for that purpose."

An examination of the original signed copy of the treaty of 1880 with China, in the archives of the Department of State, reveals that there is nothing therein which can be regarded as a title, although in Malloy's compilation (Vol. 1, p. 237) it is given the caption, "Immigration Treaty." In so far as the Chinese treaty refers to merchants, and provides for their entry into the United States, it seems entirely reasonable and proper to consider it as a "treaty of commerce and navigation." It would be unreasonable to assume in the absence of convincing evidence that the United States and Japan, for example, sought, on the one hand, to give traders the right to enter, remain, and reside for an indefinite period for the purposes

of trade, and, on the other, to isolate them while exercising that privilege from their wives and minor children.

An important social policy well recognized in the Anglo-American system lies at the foundation of this principle. Our courts have recognized the identity of interest which exists between husband and wife. The wife is an integral part of the husband's sphere of activity. *Anderson* v. *Watt,* 138 U. S. 694. The Supreme Court of the United States in deciding *United States* v. *Mrs. Gue Lim,* 176 U. S. 459, interpreted the treaty between the United States and China of November 17, 1880 (22 Stat. 826), in a manner that sustains this conclusion. See *In re Chung Toy Ho,* 42 Fed. 398; *Ex Parte Goon Dip,* 1 Fed. (2d) 811; *Ex Parte So Hakp Yon,* 1 Fed. (2d) 814; *Yee Won* v. *White,* 256 U. S. 399; *Woo Hoo* v. *White,* 243 Fed. 541; see also *In re Chin Hern Shu,* D. C. Mass., Dec. 11, 1924 (*unreported*).

It is never to be supposed that an Act of Congress overrides the provisions of a treaty unless its words are so clear that there is no escape from that conclusion. *Chew Heong* v. *United States,* 112 U. S. 536. Section 3(6) of the Immigration Act of 1924 classifies as a non-immigrant "an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provisions of a present existing treaty of Commerce and Navigation." Section 13(c) provides that "no alien ineligible to citizenship shall be admitted to the United States unless such alien . . . is not an immigrant as defined in Section 3." If we assume that aside from the Act wives and minor children of merchants are given by the treaty a right to enter the United States, it is obvious that no argument for their exclusion under the Act could arise except for the words "solely to carry on trade," which appear in § 3(6). It is argued that this phrase was directed against the wives and children of merchants, on the ground that any other construction deprives this phrase of all meaning. However, such is not the case.

In view of its legislative history, it is believed that this phraseology was adopted with a desire to grant full rights to persons entitled to enter under treaties of commerce and navigation—to show that the treaty provisions referred to were only those provisions respecting privileges of commerce and navigation, and that the class of persons referred to was the merchant class within the scope of those provisions.

There is another apparent reason for the use of the phrase "solely to carry on trade" as used in § 3(6). The various treaties of commerce and navigation do not refer exclusively to merchants. A right of entry is also accorded to ships (and necessarily to their crews) and to temporary visitors. Congress had already provided for alien seamen in § 19 of the Act and for visitors or travelers in § 3(2). The phrasing of § 3(6) seems to have been adopted partly to avoid a conflict with or repetition of §§ 3(2) and 19, and was designedly supplemental thereto. The evidence is abundant and convincing that Congress itself not only had no desire to curtail the treaty right, but also deliberately undertook to respect the treaty right to enter of all who were clothed therewith.

*Mr. Henry W. Taft* filed a brief as *amicus curiae* by special leave of Court.

Mr. Justice McReynolds delivered the opinion of the Court.

Petitioners are alien wives and minor children of resident Chinese merchants lawfully domiciled within the United States. They departed from China on the Steamship President Lincoln, and upon arrival at San Francisco, July 11, 1924, sought permanent admission to the United States. The Secretary of Labor denied their applications and gave the following reasons therefor—

"Neither the mercantile status of the husband and father, nor the applicant's relationship to him, has been

investigated for the reason that even if it were conceded that both these elements exist the applicants would be inadmissible as a matter of law. This is made necessary because of the inhibition against their coming to the United States as found in Paragraph (c) of Section 13 and that portion of Section 5 which reads as follows: 'An alien who is not particularly specified in this Act as a non-quota immigrant or a non-immigrant shall not be admitted as a non-quota immigrant or a non-immigrant by reason of relationship to any individual who is so specified or by reason of being excepted from the operation of any other law regulating or forbidding immigration.' "

The court below has inquired, Jud. Code § 239: "Are the alien Chinese wives and minor children of Chinese merchants who were lawfully domiciled within the United States prior to July 1st, 1924, such wives and minor children now applying for admission, mandatorily excluded from the United States under the provisions of the Immigration Act of 1924?"

Prior to July 1, 1924, petitioners, if otherwise unobjectionable, might have been admitted notwithstanding their race and nationality. *United States* v. *Mrs. Gue Lim,* 176 U. S. 459, 466, 468; *Yee Won* v. *White,* 256 U. S. 399, 400, 401. But it is said they are absolutely excluded by the "Act to limit the immigration of aliens into the United States, and for other purposes," approved May 26, 1924, c. 190, 43 Stat. 153, applicable provisions of which follow—

"Sec. 13. . . . (c) No alien ineligible to citizenship shall be admitted to the United States unless such alien (1) is admissible as a non-quota immigrant under the provisions of subdivision (b), (d), or (e) of section 4, or (2) is the wife, or the unmarried child under 18 years of age, of an immigrant admissible under such subdivision (d), and is accompanying or following to join him, or (3) is not an immigrant as defined in section 3."

"Sec. 3. When used in this Act the term 'immigrant' means any alien departing from any place outside the

United States destined for the United States, except
. . . (6) an alien entitled to enter the United States
solely to carry on trade under and in pursuance of the
provisions of a present existing treaty of commerce and
navigation."

" Sec. 5. When used in this Act the term ' quota immigrant ' means any immigrant who is not a non-quota immigrant. An alien who is not particularly specified in
this Act as a non-quota immigrant or a non-immigrant
shall not be admitted as a non-quota immigrant or a nonimmigrant by reason of relationship to any individual
who is so specified or by reason of being excepted from the
operation of any other law regulating or forbidding immigration."

The present existing treaty of commerce and navigation
with China, dated November 17, 1880, 22 Stat. 826, 827,
provides—

"Article II. Chinese subjects, whether proceeding to the
United States as teachers, students, merchants or from
curiosity, together with their body and household servants,
and Chinese laborers who are now in the United States
shall be allowed to go and come of their own free will and
accord, and shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation."

An alien entitled to enter the United States " solely to
carry on trade " under an existing treaty of commerce and
navigation is not an immigrant within the meaning of
the Act, § 3(6), and therefore is not absolutely excluded
by § 13.

The wives and minor children of resident Chinese merchants were guaranteed the right of entry by the treaty
of 1880 and certainly possessed it prior to July first when
the present Immigration Act became effective. *United
States* v. *Mrs. Gue Lim, supra.* That Act must be construed with the view to preserve treaty rights unless clearly

annulled, and we cannot conclude that, considering its history, the general terms therein disclose a congressional intent absolutely to exclude the petitioners from entry.

In a certain sense it is true that petitioners did not come " solely to carry on trade." But Mrs. Gue Lim did not come as a " merchant." She was nevertheless allowed to enter, upon the theory that a treaty provision admitting merchants by necessary implication extended to their wives and minor children. This rule was not unknown to Congress when considering the Act now before us.

Nor do we think the language of § 5 is sufficient to defeat the rights which petitioners had under the treaty. In a very definite sense they are specified by the Act itself as " non-immigrants." They are aliens entitled to enter in pursuance of a treaty as interpreted and applied by this court twenty-five years ago.

The question propounded by the court below must be answered in the *negative*.