HAFF, Acting Commissioner of Immigration,
v. YUNG POY.

No. 7222.

Circuit Court of Appeals, Ninth Circuit.

Dec. 11, 1933.

H. H. McPike, U. S. Atty., and Robert L. McWilliams, Asst. U. S. Atty., both of San Francisco, Cal. (Arthur J. Phelan, U. S. Immigration Service, of San Francisco, Cal., on the brief), for appellant.

John L. McNab and S. C. Wright, both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

SAWTELLE, Circuit Judge.

Appellee is a native-born Chinese, now about 17 years of age. On June 2, 1926, at the age of 9, he was lawfully admitted to the United States, under subdivision 6 of section 3 of the Immigration Act of 1924 (8 USCA § 203 (6), as the minor son of Yung Hong, a Chinese trader or merchant who, for many years prior thereto, had been lawfully domiciled in the United States and engaged in the mercantile business at San Jose, Cal. In 1927, Yung Hong, for reasons not material here, ceased to be a merchant and obtained employment as a janitor. In January, 1932, the mercantile establishment in which Yung Hong had an interest went out of business. On September 9, 1932, appellee was ordered deported to China on the ground "That he remained in the United States after failing to maintain the exempt status, under which he was admitted, of an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provisions of the present existing treaty of commerce and labor."

From an order of the District Court granting appellee's petition for a writ of habeas corpus, the government has prosecuted this appeal, and contends (1) that appellee's rights are measured by the Immigration Act of 1924 and not by the treaty of commerce and navigation with China, dated November 17, 1880 (22 Stat. 826), under which appellee's father was admitted as a merchant; and (2) that one admitted to the United States under the Immigration Act of 1924 as the minor son of a trader becomes subject to deportation if his father ceases to carry on trade.

We cannot concur in the view that appellee's rights are measured by the Immigration Act of 1924 rather than by the treaty. The act of 1924 abrogated the treaty only as to provisions thereof inconsistent with provisions of the act. Concordant with the right granted by the treaty to Chinese merchants to freely come and go, the act recognizes the right of an alien "entitled to enter the United States solely to carry on trade under and in pursuance of the provision of a present existing treaty of commerce and navigation." Section 3 (6), Act of 1924, 8 USCA § 203 (6).

In Weedin v. Wong Tat Hing, 6 F.(2d) 201, 202, and Dang Foo v. Weedin, 8 F.(2d) 221, this court held that the Immigration Act of 1924 does not exclude Chinese merchants and their families, for the reason that no provision of the act is in direct conflict with the treaty rights of such merchants. In the Wong Tat Hing Case, Judge Rudkin said:

"The appellees, who are merchants, were clearly admissible under the act of 1884 [8 USCA § 265], and they are still admissible, unless excluded by some provision of the act of 1924. The only two provisions of the latter act which have any bearing on the question now under consideration are clause 6 of section 3 and section 15 [8 USCA §§ 203 (6), 215]. The former we have already quoted, and the latter provides that the admission to the United States of an alien excepted by clause 6 of section 3 shall be for such time and under such conditions as may be by regulations prescribed, including, when deemed necessary, the giving of bond with sufficient surety, in such sum and containing such conditions as may be by regulations prescribed, to insure that at the expiration of such time, or upon failure to maintain the status under which admitted, he will depart from the United States.

"Clause 6 of section 3 excepts aliens who are entitled to enter the United States solely to carry on trade under and in pursuance of the provisions of a present existing treaty of commerce and navigation. If the acts of 1882 and 1884 [enacted to execute certain stipulations of the treaty with China] have been superseded and abrogated, how are the immigration authorities or the courts to ascertain or determine who are entitled to admission under the foregoing provision? The treaty between the United States and China (22 Stat. 826) consists of four brief articles and is not self executing. Article IV provides that, whenever the government of the United States shall adopt legislative measures in accordance therewith, such measures will be communicated to the government of China, and the acts of 1882 and 1884 were passed for the express purpose of executing the stipulations of that treaty. If these acts have been abrogated, there is now no law to execute the stipulations of the treaty because the three lines of clause 6 can hardly be considered as such a law.

"Section 15 of the Immigration Act of 1924 [8 USCA § 215] provides that the admission of clause 6 aliens shall be under such conditions as may be by regulations prescribed; but this general provision would not seem to work a repeal of the existing Chinese exclusion acts, and, so far as we are advised, no attempt has been made to promulgate any such regulations."

In Cheung Sum Shee v. Nagle, 268 U. S. 336, 45 S. Ct. 539, 69 L. Ed. 985, the Supreme Court answered in the negative the following question certified to it by this court: "Are the alien Chinese wives and minor children of Chinese merchants who were lawfully domiciled within the United States prior to July 1, 1924, such wives and minor children now applying for admission, mandatorily excluded from the United States under the provisions of the Immigration Act of 1924?" saying:

"The wives and minor children of resident Chinese merchants were guaranteed the right of entry by the treaty of 1880 and certainly possessed it prior to July 1st when the present Immigration Act became effective. United States v. Mrs. Gue Lim, supra [176 U. S. 459, 20 S. Ct. 415, 44 L. Ed. 544]. That act must be construed with the view to preserve treaty rights unless clearly annulled, and we cannot conclude that, considering its history, the general terms therein disclose a congressional intent absolutely to exclude the petitioners from entry.

"In a certain sense it is true that petitioners did not come 'solely to carry on trade.' But Mrs. Gue Lim did not come as a 'merchant.' She was nevertheless allowed to enter, upon the theory that a treaty provision admitting merchants by necessary implication extended to their wives and minor children. This rule was not unknown to Congress when considering the act now before us."

In view of these decisions, we are of opinion that appellee's right to remain in the United States is measured by the treaty and not by the Immigration Act of 1924, even though he came here after the passage of that Act.

This being so, does the change in his father's status require that appellee be deported? In support of its claimed right to deport appellee because he has lost his communicated status as the son of a merchant, the government relies upon section 15 of the Act of 1924 (8 USCA § 215) and the departmental rules promulgated thereon. Said section 15 provides, in part, that, upon failure to maintain the status under which admitted, the alien will depart. But, as we have seen, appellee's right to remain in the

United States is governed by the treaty and not by the act, and no limitation or restriction upon the alien's stay in the United States is contained in the treaty. On the contrary, it is well settled that a Chinese merchant, lawfully admitted prior to the act of 1924, may remain here after he has lost his status as a merchant [see Lo Hop v. U. S. (C. C. A. 6) 257 F. 489, and Wong Sun Fay v. U. S. (C. C. A. 9) 13 F.(2d) 67]; and the government therefore concedes that appellee's father is not now deportable. The right of such a merchant's wife or minor child to remain here after loss of his or her communicated status, by reason of the merchant's changed occupation, is, of course, another question; but that such an alien's right is coextensive with the right of the husband, or father, seems a just and reasonable answer, for the absurdities and hardships of a contrary rule of law are apparent. Thus, if a merchant, because of illness, mishap, economic condition, or other misfortune, were required to change his status as a merchant and secure other employment, should his hapless—and perhaps helpless—family be deported and he allowed to remain, or perforce required to remain because of long absence from his native country and environment? Likewise, must the family of such a merchant be deported because, upon the death of the merchant, the communicated status of the wife and children has been lost?

With these harsh consequences in mind, and in view of the well-settled rule of law "that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion" (Lau Ow Bew v. United States, 144 U. S. 47, 59, 12 S. Ct. 517, 520, 36 L. Ed. 340), we cannot conclude that the rights of such aliens to remain here should be construed so narrowly as the government contends, or that it was the intention of Congress in enacting the Immigration Act of 1924 that aliens admitted to the United States by virtue of the "merchant status" of their prior domiciled father or husband, as the case might be, should be deported because the merchant, although not subject to deportation, has lost his status as a merchant.

What the rights of such aliens would be if the merchant had been admitted after the passage of the 1924 act is a question we need not consider.

For the foregoing reasons, the order of the District Court discharging appellee from custody is affirmed.