UNITED STATES ex rel. COCO v. HUGHES, District Director of Immigration, etc.

UNITED STATES ex rel. CALAFIORE v. SAME.

Nos. M–5011, M–5010.

District Court, D. New Jersey.

Nov. 5, 1934.

Adrian Bonnelly, of Philadelphia, Pa., for relators.

Harlan Besson, U. S. Atty., of Trenton, N. J. (by Oliver Randolph, Asst. U. S. Atty., of Newark, N. J.), for respondents.

AVIS, District Judge.

Writs of habeas corpus were allowed in the above cases, returns have been made thereto, and the respective counsel have presented their arguments and briefs.

Relator Sebastiano Coco, a citizen of Italy, came to the United States on October 5, 1925, on the steamship Providence, landing at Providence, R. I. He was admitted as a merchant; the record showing that his visit was to be temporary and that the stated length of stay was six months.

Relator Giuseppe Calafiore, also a citizen of Italy, arrived in the United States at New York on April 27, 1926, on board the steamship Providence, and was admitted as a merchant, representing his stay to be temporary and for a period of four months.

The record as to both shows that they were admitted under the commerce treaty between the United States and Italy, and the immigration statutes.

Shortly after the arrival of Calafiore, both of the relators took up their residence at the same address in Newark, N. J., where they claim they were engaged as partners in the business of importing and selling olive oil and cheese. Their testimony to this effect is not contradicted.

Later they both came to Philadelphia, Pa.—whether together or separately is not quite clear in the testimony. However, they were living together at 1812 South Eighth street, Philadelphia, from some time early in the year 1930 continuously up to the time of their arrest for deportation. At this latter residence they engaged somewhat in the purchase and sale of oil and cheese, but, because of the business being poor, they as partners operated a shoe repair shop, in which business they both were employed, and the testimony indicates that they sold some oil and cheese without, however, having a distinct store for that purpose, and making sales amongst a few people with whom they were acquainted and their friends. Apparently they relied for their income as much or more upon the shoe repairing business, as they did upon the oil and cheese business.

The relators were arrested for deportation, given a hearing, as to the fairness of which there is no complaint, and a warrant for their deportation was issued on April 26, 1933, as to Sebastiano Coco, and on May 3, 1933, as to Giuseppe Calafiore.

Subsequent thereto, on request of the attorney for both relators, and upon the sworn

affidavit of Coco, the warrants of·deportation were held, and the date of deportation extended from time to time up to April 30, 1934, upon the representation of the desire of relators to dispose of their business.

Applications were made for further extensions which were refused, and the warrants reinstated, and the relators taken into custody for deportation. At this time applications were made to this court, and writs of habeas corpus allowed.

The government contends that these relators are subject to deportation under the Immigration Act of 1924.

The relevant parts of the acts of Congress applying to the present controversy are as follows:

"When used in this subchapter the term 'immigrant' means any alien departing from any place outside the United States destined for the United States, except * * * (6) an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provision of a present existing treaty of commerce and navigation." 8 USCA § 203.

"The admission to the United States of an alien excepted from the class of immigrants by clause * * * (6) of section 203 of this title, * * * shall be for such time as may be by regulations prescribed, * * * to insure that, at the expiration of such time or upon failure to maintain the status under which admitted, he will depart from the United States." 8 USCA § 215.

"Any alien who at any time after entering the United States is found to have been at the time of entry not entitled under this subchapter to enter the United States, or to have remained therein for a longer time than permitted under this subchapter or regulations made thereunder, shall be taken into custody and deported in the same manner as provided for in sections 155 and 156 of this title. * * *" 8 USCA § 214.

The regulations of the Department, promulgated under the statute and applying to the relators in these cases, read as follows: "Where the examining officer is satisfied beyond a doubt that an alien seeking to enter the United States as a nonimmigrant pursuant to subdivision (6) of section 3 of the immigration act of 1924 is entitled to enter solely to carry on trade under and in pursuance of a treaty of commerce and navigation which existed on May 26, 1924, he may admit such alien, or his lawful wife and minor children, if otherwise admissible, on condition that such alien shall maintain such status of a nonimmigrant during his stay in the United States, and upon failure or refusal to maintain such status that he will voluntarily depart: * * *." Immigration Rules (1930), rule 3, subdiv. H, par. 3, p. 125.

Counsel for relators insists that they are not deportable, claiming that the statute permitting their admission to the United States as aliens relates only as to their status at the time of entry; and the fact that such status has changed since their entry, by reason that they are not now solely engaged as merchants but are in fact laborers, does not justify their deportation.

The first contention set up in relators' brief calls attention to the amendment to section 3, 8 USCA § 203, supra, passed by Congress in 1932. The changes made by the amendment, which I do not deem applicable to the instant case, provide that a nonimmigrant alien should be admitted "solely to carry on trade between the United States and the foreign state of which he is a national," and also authorize the admission of the wife, unmarried children under twenty-one years of age, if accompanying or following to join him.

Counsel argues that this amendment, although not applying to relators, is helpful to them, in that it establishes the fact that there was, prior to the enactment of the 1932 act, no requirement that a treaty merchant should engage in commerce between the United States and the state of which the alien was a citizen. Nothing in this act applies to the instant case. The basis of the deportation order is the fact that the relators did not maintain their status solely as merchants, and I am unable to discern any applicability of the amendment.

The relators rely upon the provisions of the treaty between Italy and the United States entered into between the contracting nations in 1871. The relevant part of the treaty (article 2) reads as follows: "The citizens of each of the high contracting parties shall have liberty to travel in the States and territories of the other, to carry on trade, wholesale and retail, to hire and occupy houses and warehouses, to employ agents of their choice, and generally to do anything incident to or necessary for trade, upon the same terms as the natives of the country, submitting themselves to the laws there established." 17 Stat. 845, 846.

Counsel for relators insists that they are entitled to the benefits of this treaty, and that the Immigration Act of 1924, supra, is not applicable, and does not affect them as treaty merchants. An examination of the decisions of the Supreme Court demonstrates that a treaty is subject to such acts as Congress may subsequently pass for its enforcement, modification, or repeal.

In the Head Money Cases (Edye v. Robertson), 112 U. S. 580, on page 599, 5 S. Ct. 247, 254, 28 L. Ed. 798, the court said: "In short, we are of opinion that, so far as a treaty made by the United States with any foreign nation can become the subject of judicial cognizance in the courts of this country, it is subject to such acts as congress may pass for its enforcement, modification, or repeal." And again on page 600 of 112 U. S., 5 S. Ct. 247, 254: "It is enough to say that, congress having the power to pass a law regulating immigration as a part of the commerce of this country with foreign nations, we see nothing in the statute by which it has here exercised that power forbidden by any other part of the constitution."

In the case of Whitney v. Robertson, 124 U. S. 190, 193–195, 8 S. Ct. 456, 458, 31 L. Ed. 386, the court inter alia said:

"But, independently of considerations of this nature, there is another and complete answer to the pretensions of the plaintiffs. The act of congress under which the duties were collected authorized their exaction. It is of general application, making no exception in favor of goods of any country. It was passed after the treaty with the Dominican republic, and, if there be any conflict between the stipulations of the treaty and the requirements of the law, the latter must control. A treaty is primarily a contract between two or more independent nations, and is so regarded by writers on public law. For the infraction of its provisions a remedy must be sought by the injured party through reclamations upon the other. When the stipulations are not self-executing they can only be enforced pursuant to legislation to carry them into effect, and such legislation is as much subject to modification and repeal by congress as legislation upon any other subject. If the treaty contains stipulations which are self-executing, that is, require no legislation to make them operative, to that extent they have the force and effect of a legislative enactment. Congress may modify such provisions, so far as they bind the United States, or supersede them altogether. By the constitution a treaty is placed on the same footing, and made of like obligation, with an act of legislation. Both are declared by that instrument to be the supreme law of the land, and no superior efficacy is given to either over the other. When the two relate to the same subject, the courts will always endeavor to construe them so as to give effect to both, if that can be done without violating the language of either; but if the two are inconsistent, the one last in date will control the other, provided always the stipulation of the treaty on the subject is self-executing. If the country with which the treaty is made is dissatisfied with the action of the legislative department, it may present its complaint to the executive head of the government, and take such other measures as it may deem essential for the protection of its interests. The courts can afford no redress. Whether the complaining nation has just cause of complaint, or our country was justified in its legislation, are not matters for judicial cognizance. In Taylor v. Morton [Fed. Cas. No. 13,799], 2 Curt. 454, 459, this subject was very elaborately considered at the circuit by Mr. Justice Curtis, of this court, and he held that whether a treaty with a foreign sovereign had been violated by him; whether the consideration of a particular stipulation of the treaty had been voluntarily withdrawn by one party so that it was no longer obligatory on the other; whether the views and acts of a foreign sovereign had given just occasion to the legislative department of our government to withhold the execution of a promise contained in a treaty, or to act in direct contravention of such promise, were not judicial questions; that the power to determine these matters had not been confided to the judiciary, which has no suitable means to exercise it, but to the executive and legislative departments of our government; and that they belong to diplomacy and legislation, and not to the administration of the laws. And he justly observed, as a necessary consequence of these views, that if the power to determine these matters is vested in congress, it is wholly immaterial to inquire whether by the act assailed it has departed from the treaty or not, or whether such departure was by accident or design, and, if the latter, whether the reasons were good or bad.

"In these views we fully concur. It follows, therefore, that when a law is clear in its provisions, its validity cannot be assailed before the courts for want of conformity to

stipulations of a previous treaty not already executed. Considerations of that character belong to another department of the government. The duty of the courts is to construe and give effect to the latest expression of the sovereign will."

See, also, J. Ribas y Hijo v. United States, 194 U. S. 315, 324, 24 S. Ct. 727, 48 L. Ed. 994; Alvarez y Sanchez v. United States, 216 U. S. 167, 30 S. Ct. 361, 54 L. Ed. 432.

On this subject the Supreme Court, in The Chinese Exclusion Case (Chae Chan Ping v. U. S.), 130 U. S. 581, on page 609, 9 S. Ct. 623, 631, 32 L. Ed. 1068, said: "The power of exclusion of foreigners being an incident of sovereignty belonging to the government of the United States, as a part of those sovereign powers delegated by the constitution, the right to its exercise at any time when, in the judgment of the government, the interests of the country require it, cannot be granted away or restrained on behalf of any one. The powers of government are delegated in trust to the United States, and are incapable of transfer to any other parties. They cannot be abandoned or surrendered. Nor can their exercise be hampered, when needed for the public good, by any considerations of private interest. The exercise of these public trusts is not the subject of barter or contract."

The principle involved, that a subsequent act of Congress, if inconsistent, will abrogate the provisions of a prior existing treaty, is decided in the case of United States v. Lee Yen Tai, 185 U. S. 213, 22 S. Ct. 629, 46 L. Ed. 878. In this case it is also held that when possible effect should be given to both.

Counsel for relators cites many cases holding that under the treaty with China the fact that a Chinese national admitted to the United States as a merchant does not become subject to deportation because, after entry, he becomes a laborer; but most of these cases were decided before the enactment of the 1924 Act, and were based upon the provisions of the treaty and the acts of Congress passed to put the agreement into effect. The suggestion in relators' brief that these cases are authority for the principle that no alien can be deported who changes his status after entry is not sustained by these cases. Most of them are based upon the contention of illegal entry, and the fact of change of status is relied upon to prove fraud at the time of admission.

It does not seem required to cite or analyze most of the Chinese cases, as they are based upon the treaty with China and the acts of Congress passed to enforce exclusion of laborers, and are not relevant to the instant case.

Some of them have a bearing on the facts in the instant case, especially the cases decided since the passage of the Act of 1924.

The case of Cheung Sum Shee v. Nagle, Com'r, 268 U. S. 336, pages 345, 346, 45 S. Ct. 539, 540, 69 L. Ed. 985, adjudicated the rights of wives and minor children of Chinese merchants. The court in construing sections 13, 3, and 5 of the 1924 Act [8 US CA §§ 213, 203, 205], stated: "The wives and minor children of resident Chinese merchants were guaranteed the right of entry by the treaty of 1880 and certainly possessed it prior to July 1st when the present Immigration Act became effective. United States v. Mrs. Gue Lim, supra [176 U. S. 459, 20 S. Ct. 415, 44 L. Ed. 544]. That Act must be construed with the view to preserve treaty rights unless clearly annulled, and we cannot conclude that, considering its history, the general terms therein disclose a congressional intent absolutely to exclude the petitioners from entry."

In that case the act and the treaty are construed together, and no ruling is made therein indicating that the terms of a treaty make its provisions controlling as against a subsequent act of Congress inconsistent therewith.

In Ex parte Masuda Tatsumi (D. C. N. D. Calif. S. D.) 49 F.(2d) 935, 936, a Japanese had been admitted to the United States as a temporary visitor for a period not to exceed six months for the purpose of inspecting a Buddhist Sunday school. He resisted deportation, claiming that before his arrest he had become a merchant and was entitled to a treaty trader status by virtue of subdivision 6 of section 3 of the Immigration Act of 1924 (8 USCA § 203 (6), and under article 1 of the Treaty of Commerce between the United States and Japan (37 Stat. 1504). The court, among other things, said: "Petitioner contends that he was lawfully within the United States at the time that he changed his status, when as a matter of fact, his stay here was unlawful. The time of his temporary permit had expired, and under such circumstances attempting to take on the status of a treaty trader would avail him nothing. He applied for and obtained temporary admission under the immigration laws as an alien otherwise inadmissible. He entered into a solemn obligation with the authorities representing the United

States government to depart within six months. At the expiration of that period his stay within the United States was unlawful, and he states he knew it was unlawful. Section 14 of the Immigration Act of 1924 (8 USCA § 214) provides that any alien who remains longer than the time permitted by the act and regulations thereunder 'shall be taken into custody and deported.' Under all the authorities an alien gains no rights by an occupation entered into while unlawfully in the country."

While that case dealt with a visitor for a limited period, the decision states quite clearly that the statute and not the treaty should control the action of the court.

That case was affirmed on appeal to the Circuit Court of Appeals in 55 F.(2d) 623, 624. In the latter case the court, quoting from the case of Ng Fung Ho et al. v. White, 259 U. S. 276, 42 S. Ct. 492, 66 L. Ed. 938, said on page 624 of 55 F.(2d): "'Unlawful remaining of an alien in the United States is an offense distinct in its nature from unlawful entry into the United States. One who has entered lawfully may remain unlawfully.'"

In the case of Haff v. Yung Poy (C. C. A. 9) 68 F.(2d) 203, it was held that a minor child of a Chinese merchant was not subject to deportation, even after the father had changed his status to laborer. This appears to be so because there is no provision in any statute which provides for the deportation of the children, if legally admitted to this country.

In the case of United States ex rel. Yee See Que v. McGregor (D. C. W. D. Pa.) 2 F.Supp. 688, it was held that the son of a Chinese merchant could not be deported, even though he had changed his occupation from merchant to laborer. The principle of law there stated places the case in much the position as was held in Haff v. Yung Poy (C. C. A.) 68 F.(2d) 203, supra. It is stated in the opinion that: "In Cheung Sum Shee v. Nagle, 268 U. S. 336, 45 S. Ct. 539, 69 L. Ed. 985, it was held that the wives and minor children of resident Chinese merchants were admissible under the treaty with China of November 17, 1880 (22 Stat. 826). In so deciding the Supreme Court held, in effect, that the treaty rights of Chinese merchants had not been affected by the act of 1924." Page 688 of 2 F.Supp.

I am unable to agree that this is the effect of the Supreme Court case. As hereinbefore stated, I believe the treaty and the statute were construed together in that case, and that the Supreme Court did not intend to hold that the treaty rights of Chinese merchants had not been in any way affected by the act of 1924.

The facts in the case of United States ex rel. To Ming v. Commissioner of Immigration (D. C. S. D. N. Y.) 52 F.(2d) 791 are practically identical with the facts in the instant case, with the exception that in that case the relator was admitted as a Chinese merchant, a more privileged class in accordance with some of the decisions. Judge Patterson there held: "Chinese alien entering United States as merchant after effective date of 1924 Immigration Act held subject to deportation, upon later changing status to that of laborer." Syl. 4.

The treaty with Italy does not extend any special privileges to the nationals of that country as to the conditions of their admission to the United States or the length of their stay.

Beyond a doubt Congress has the right to exclude aliens, or to permit them to enter this country upon prescribed conditions. The conditions have been enacted in the act of 1924.

That act provides for certain quotas, and, in addition, permits certain nonimmigrant aliens to enter the country for certain specified purposes, under restrictions set out in the statute.

Under the statutes, and regulations legally adopted thereunder, the relators were admitted as merchants upon the understanding, as set out in the statute, that if they failed to maintain the status under which admitted they would depart from the United States. Upon their failure to depart voluntarily, the law authorized their deportation, as having remained here for a longer period of time than permitted under the law and regulations made thereunder. 8 USCA § 214.

The proof establishes the fact that they changed their status; that they were not engaged solely as merchants, but were employed in labor, repairing shoes.

This is admitted by them, and as to Coco it appears fully in his affidavit submitted for the purpose of extending the time for his departure.

The duty of the court is to enforce the law; and, consequently, the writs of habeas

corpus issued in each case will be discharged, and the relators will be remanded to the custody of the Commissioner for deportation.