## CHUNG YIM v. UNITED STATES. *
### No. 10209.

Circuit Court of Appeal, Eighth Circuit.
July 5, 1935.

*Writ of certiorari denied 56 S. Ct. 150, 80 L. Ed. —.

Charles A. Lich, of St. Louis, Mo., for appellant.

Herbert. H. Freer, Asst. U. S. Atty., of St. Louis, Mo. (Harry C. Blanton, U. S. Atty., of Sikeston, Mo., on the brief),. for the United States.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This matter is before us on an appeal from an order dismissing a writ of habeas corpus. Appellant, petitioner below, is a subject and citizen of China. On June 16, 1925, he applied for entry into the United States as a trade treaty merchant at the port of San Francisco, at which time he was in possession of a certificate issued under the provisions of the Chinese Exclusion Act § 6, 22 Stat. 60, as amended, 23 Stat. 116, 32 Stat. 828, § 7, 37 Stat. 737, § 3 (8 USCA § 265) and duly visaed by the United States Consul. On July 3, 1925, he was excluded and denied admission by a board of special inquiry at the port of San Francisco. On July 8, 1925, he appealed to the Secretary of Labor from the decision excluding him, and on August 21, 1925, an order was made sustaining his appeal, and he was ordered admitted, provided a $500 bond were filed, guaranteeing that he would maintain his exempt status in the United States. Such bond was furnished, and on October 26, 1926, the Department of Labor voluntarily canceled it.

It is admitted that at the time of his entry, appellant was exempt from the excluding provisions of the Chinese Exclusion Act as a trade treaty merchant (Immigration Act of 1924, § 3 (6), 43 Stat. 154, 8 USCA § 203 (6). He maintained his status as a merchant until April, 1931, when he was forced to obtain employment as a laborer in a laundry. A warrant of arrest was issued, charging that he was unlawfully in the United States, in violation of the Immigration Act of 1924 (Act May 26, 1924, c. 190, § 13, 43 Stat. 161, 8 USCA § 213), because he had failed to maintain his status under which he was admitted. After hearing an order of deportation was entered by the Department of Labor in an administrative proceeding. He thereupon brought proceedings in habeas corpus, claiming that he was unlawfully deprived of his liberty by reason of the action of the Department of Labor.

The treaty with China, concluded November 17, 1880, and proclaimed October 5, 1881 (22 Stat. 826), provides in part as follows:

"Whenever in the opinion of the Government of the United States, the coming of Chinese laborers to the United States, or their residence therein, affects or threatens to affect the interests of that country, or to endanger the good order of the said country or of any locality within the territory thereof, the Government of China agrees that the Government of the United States may regulate, limit, or suspend such coming or residence, but may not absolutely prohibit it. The limitation or suspension shall be reasonable and shall apply only to Chinese who may go to the United States as laborers, other classes not being included in the limitations. Legislation taken in regard to Chinese laborers will be of such a character only as is necessary to enforce the regulation, limitation, or suspension of immigration, and immigrants shall not be subject to personal maltreatment or abuse. * * *

"Chinese subjects, whether proceeding to the United States as teachers, students, merchants or from curiosity, together with their body and household servants, and Chinese laborers who are now·in the United States shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation." Articles 1, 2.

Rule 3 (subd. H, par. 3) promulgated by the Department of Labor July 1, 1925, contains the following provisions: "Where the examining officer is satisfied beyond a doubt that an alien seeking to enter the United States as a non-immigrant pursuant to sub-division (6) of section 3 of the Immigration Act of 1924 is entitled to enter solely to carry on trade under and in pursuance of an existing treaty of commerce and navigation he may admit such

alien, or his lawful wife and minor children, if otherwise admissible, on condition that such alien shall maintain such status of a non-immigrant during his stay in the United States, and upon failure or refusal to maintain such status that he will depart: Provided, That when such examining officer is not satisfied that any alien is a non-immigrant within the meaning of subdivision (6) of section 3 of said act he shall hold said alien for examination in relation thereto by a board of special inquiry, and such board may admit such alien, if otherwise admissible, on the conditions herein set forth and may exact bond in the sum of $500 to insure the faithful performance of all and singular of such conditions: And provided further, That at ports where there are no permanent boards of special inquiry the exacting of bonds shall be under the control of the officer in charge."

The sole question presented by this appeal is whether an alien Chinese admitted to the United States since the passage of the Immigration Act of 1924 as a trade treaty merchant, is now subject to deportation upon his change of status to that of a laborer.

Appellant contends (1) that rule 3 above quoted, was not in effect until after he applied for admission; (2) that the Immigration Act of 1924 does not modify or amend the treaty of 1880; (3) that the rules are ineffectual to override the treaty; (4) that the admission of appellant was a permanent one, the Department of Labor being without legal authority to exact a bond, or in any other manner restrict or limit his admission into the United States; and (5) that the voluntary cancellation of the bond by the Department of Labor transformed the entry into a permanent and unconditional admission.

 In the absence of an Act of Congress so authorizing, a Chinese person admitted to this country as a merchant could not upon subsequent change of his status to that of a laborer be deported unless his original entry were fraudulent. Wong Sun Fay v. United States (C. C. A. 9) 13 F. (2d) 67; Dang Foo v. Day (C. C. A. 2) 50 F.(2d) 116; Lo Hop v. United States (C. C. A. 6) 257 F. 489; Haff v. Yung Poy (C. C. A. 9) 68 F.(2d) 203. But if the Act of Congress contained provision that some subsequent act or omission by the alien would change his lawful entry into the country into an unlawful remaining in the country, then he is subject to deportation, and this is true even though the alien at the time he entered the United States could not have been deported. Congress has power at any time to order the deportation of aliens whose presence in the country it deems harmful. Ng Fung Ho v. White, 259 U. S. 276, 42 S. Ct. 492, 494, 66 L. Ed. 938; Kumaki Koga v. Berkshire (C. C. A. 9) 75 F.(2d) 820.

In Ng Fung Ho v. White, supra, it is, among other things, said: "Unlawful remaining of an alien in the United States is an offense distinct in its nature from unlawful entry into the United States. One who has entered lawfully may remain unlawfully."

Section 14 of the Immigration Act of 1924 (Act May 26, 1924, c. 190, § 14, 43 Stat. 162, 8 USCA § 214) provides: "Any alien who at any time after entering the United States is found to have been at the time of entry not entitled under this Act [subchapter] to enter the United States, or to have remained therein for a longer time than permitted under this Act [subchapter] or regulations made thereunder, shall be taken into custody and deported in the same manner as provided for in sections 19 and 20 of the Immigration Act of 1917 [sections 155 and 156 of this title]. * * *"

Section 15 (8 USCA § 215) provides: "The admission to the United States of an alien excepted from the class of immigrants by clause (2), (3), (4), (5), or (6) of section 3 [section 203 of this title], or declared to be a nonquota immigrant by subdivision (e) of section 4 [section 204 of this title], shall be for such time as may be by regulations prescribed, and under such conditions as may be by regulations prescribed (including, when deemed necessary for the classes mentioned in clause (2), (3), (4), or (6) of section 3 [section 203], the giving of bond with sufficient surety, in such sum and containing such conditions as may be by regulations prescribed) to insure that, at the expiration of such time or upon failure to maintain the status under which admitted, he will depart from the United States."

While section 14 alone would not have the effect of changing the prior law, that a change of status after admission would not subject the alien to deportation (there being no Act of Congress so providing), yet Congress has definitely declared in section 15 that the alien admitted as a trader under clause (6) of section 3 (8 USCA § 203 (6) may not remain in this country if

he changes his vocation after entry. Appellant was admitted under clause (6) of section 3, which exempted from the term immigrant "an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provision of a present existing treaty of commerce and navigation." Act May 26, 1924, c. 190, § 3 (6), 43 Stat. 154, 8 USCA § 203 (6).

■ Section 15 is not inconsistent with the treaty provisions, because the treaty relates to the admission of traders, and not to their remaining in this country, nor to a change of status; and, as we have already observed, one who enters lawfully may remain unlawfully. It is, however, not material whether this section is inconsistent with the provisions of the treaty or not, because Congress has the power to abrogate a treaty. Boudinot v. United States, 11 Wall. 616, 20 L. Ed. 227; Cheung Sum Shee v. Nagle, 268 U. S. 336, 45 S. Ct. 539, 69 L. Ed. 985; Head Money Cases, 112 U. S. 580, 5 S. Ct. 247, 28 L. Ed. 798.

■ Rule 3 of the Department of Labor, supra, was adopted pursuant to section 15 of the Act of 1924. This section 15 is not self-executing in so far as it has to do with the right of the alien to remain in this country, but it delegates to the Department of Labor power to promulgate regulations and prescribe conditions. As to the maintenance of the status under which an alien has been permitted to enter the country, it confers administrative powers and does not delegate legislative powers. We are of the view that rule 3 is not invalid under the doctrine of Panama Refining Co. v. Ryan, 293 U. S. 388, 55 S. Ct. 241, 79 L. Ed. 446. As sustaining this conclusion, see Kumaki Koga v. Berkshire (C. C. A. 9) 75 F.(2d) 820; United States ex rel. To Ming v. Commissioner (D. C. N. Y.) 52 F. (2d) 791.

The decisive question, therefore, is whether rule 3 was in effect at the time of appellant's admission. He applied for entry June 16, 1925, confessedly prior to the time the rule went into effect, and the finding of the court is that upon his appeal being sustained, August 25, 1925, and his bond being furnished, "he was thereupon admitted into the United States." This finding is not challenged.

■ It appears from the stipulation of facts that on June 16, 1925, appellant applied for admission, and on July 3, 1925, he was excluded by a Board of Inquiry, and that he was formally admitted on August 25, 1925. He was admitted by reason of this order of August 25, 1925, and that is the only proceeding upon which appellant can base his status as an admitted trade treaty merchant. Until he actually entered this country, he at most had only an inchoate right so to do, and we are clear that the Act of 1924 was in effect at and prior to the time appellant was admitted into the United States. He is, therefore, subject to deportation because he has failed to maintain his status as a merchant.

■ But there is a further ground upon which the order appealed from must be affirmed. Whatever license appellant had either to enter or remain in this country was revocable at the will of the government of the United States. The government had the undoubted power of exclusion to be exercised under the Constitution by the law-making power, which could not be abandoned or surrendered. Chae Chan Ping v. United States, 130 U. S. 581, 9 S. Ct. 623, 32 L. Ed. 1069; Ng Fung Ho v. White, 259 U. S. 276, 42 S. Ct. 492, 66 L. Ed. 938; Bugajewitz v. Adams, 228 U. S. 585, 33 S. Ct. 607, 57 L. Ed. 978; Lapina v. Williams, 232 U. S. 78, 34 S. Ct. 196, 58 L. Ed. 515; Lewis v. Frick, 233 U. S. 291, 34 S. Ct. 488, 58 L. Ed. 967. As said by the Supreme Court in Chae Chan Ping v. United States, supra: "The power of exclusion of foreigners being an incident of sovereignty belonging to the Government of the United States, as a part of those sovereign powers delegated by the Constitution, the right to its exercise at any time when, in the judgment of the Government, the interests of the country require it, cannot be granted away or restrained on behalf of any one. The powers of Government are delegated in trust to the United States, and are incapable of transfer to any other parties. They cannot be abandoned or surrendered. Nor can their exercise be hampered, when needed for the public good, by any considerations of private interest. The exercise of these public trusts is not the subject of barter or contract. Whatever license, therefore, Chinese laborers may have obtained previous to the Act of October 1, 1888, to return to the United States after their departure, is held at the will of the Government, revocable at any time, at its pleasure."

And, as said in Ng Fung Ho v. White, supra: "Congress has power to order at any time the deportation of aliens whose

presence in the country it deems hurtful, and may do so by appropriate executive proceedings."

Appellant contends that rule 3, supra, is not an apt exercise of the delegated power, because while providing a condition of entry, it makes no provision for deportation. But section 14 makes such provision, and as the government could exclude an alien by appropriate legislative enactment after his entry, appellant's objection to rule 3 is removed by rule 18, paragraph 5, promulgated October 1, 1926, which provides in part as follows: " * * * and aliens admitted under section 3 (6) of said act as nonimmigrants (together with their alien wives and minor children admitted at the same time or subsequently) who shall fail or refuse to maintain such status, shall be taken into custody upon the warrant of the Secretary of Labor and deported in the manner provided by section 14 of the Immigration Act of May 26, 1924."

We conclude that the order appealed from should be affirmed, and it is so ordered.