In re JEU FOON.

In re FONG NONG.

In re GEE GONG.

Nos. 157, 158, 163.

United States District Court,
E. D. Arkansas. E. D.

Dec. 20, 1950.

J. F. Delaney, Horace A. Nabors, L. B. Stanaland, Officers, U. S. Department of Justice, Immigration and Naturalization Service, New Orleans, La., for the United States.

Marvin Neuman, Philadelphia, Pa., for petitioners.

LEMLEY, District Judge.

These causes, consolidated for hearing, are before the Court upon the applications of three alien Chinese, Jeu Foon, Gee Gong, and Fong Nong, for naturalization; the Government, through one of the Examiners of the Immigration and Naturalization Service, is resisting the petitions on the ground that petitioners were not admitted into the United States for permanent residence. The pertinent facts as to the three petitioners and likewise the objections of the Government to their naturalization are in each case identical.

All three of the petitioners were admitted to this country after July 1, 1924, at which time the Immigration Act of 1924, 8 U.S.C.A. § 201 et seq., became effective, but prior to July 5, 1932, as the minor children of domiciled Chinese merchants who had been admitted to this country prior to 1924 as permanent residents under the terms of the Treaty between the United States and China, negotiated in 1880, 22 Stat. 826 et seq., and various statutes amendatory thereof and supplementary thereto. Since their original admission all three of the petitioners have resided continuously in the United States, all have married citizens, and it has been stated and not denied that all are the parents of children who are native born citizens of the United States. No question is here raised that any of the petitioners is immoral, disloyal, or subversive; each stated under oath that he was opposed to the Communist regime in China, and each professed willingness to bear arms in defense of the United States.

The Petitioners contend that they were admitted to the United States for permanent residence as the minor children of domiciled Chinese merchants under the Treaty of 1880, above referred to, and that they are subject to naturalization under the Act of December 17, 1943, 57 Stat. 601, 8 U.S.C.A. § 703(a), which repealed the so-called Chinese Exclusion Act, 8 U.S.C.A. § 261 et seq. The Government, on the other hand, contends that petitioners were admitted to the country as non-immigrant aliens under Paragraph 6 of Section 3 of the Immigration Act of 1924, 8 U.S.C.A. § 203(6), were not admitted for permanent residence, and are not eligible for naturalization.

Petitioners concede that admission for permanent residence is an indispensable prerequisite to naturalization, 8 U.S.C.A. § 729(b); In re Jow Gin, 7 Cir., 175 F.2d 299, but they insist that their admission was under the 1880 Treaty and for permanent residence, notwithstanding the Immigration Act of 1924. This contention is supported by the decision of the Supreme Court in Cheung Sum Shee, v. Nagle, 268 U.S. 336, 45 S.Ct. 539, 69 L.Ed. 985 (which was not a naturalization case, however) and further by United States v. Yung Poy, 9 Cir., 177 F.2d 144; In re Chi Yan Cham Louie, D.C.Wash., 70 F.Supp. 493, appeal dismissed, Bonham v. Chi Yan Cham Louie, 9 Cir., 166 F.2d 15; Petition of Wong Choon Hoi, D.C.Cal., 71 F.Supp. 160, appeal dismissed, Carmichael v. Wong Choon Hoi, 9 Cir., 164 F.2d 696. In the three cases last cited, Chinese who were admitted to the United States after 1924 as minor children of domiciled Chinese merchants, under circumstances concededly indistinguishable from those present in the instant cases, were admitted to citizenship over the objections of the Government based upon the same contentions as to the applicability of the Immigration Act of 1924 as are here made. In the instant matters the Government apparently concedes the persuasive force of the three cases just referred to, but contends that their holdings are wrong and should not be followed. We have found no decision from the Eighth Circuit bearing upon this question, and counsel cited us to none; hence these cases would seem to be of first impression in this Circuit.

After carefully considering the validity of the contentions of the respective parties and giving due weight to the decisions of the Courts in the Ninth Circuit, which Courts should be peculiarly competent to pass upon problems dealing with Chinese, we have come to the conclusion that those decisions are sound and should be followed.

Briefly, the position of the Government is that no Chinese admitted to this country between July, 1924 and the effective

date of the 1943 Act is eligible for naturalization, whereas Chinese who have come into the country since 1943 may be naturalized as soon as they have met the minimum requirements of residence here. The fallacy of this contention was pointed out by Judge Black in the case of In re Chi Yan Cham Louie, supra, where it was said:

" * * * However, I assume that not since about 1880 until after the Act of 1943 has any person from China been listed as entering the United States as an immigrant; but both before 1924 and since the Supreme Court of the United States has said that those coming here under the Treaty of 1880 and their families, whether coming with the merchant or thereafter, came for permanent residence. * * * If Congress had intended only those persons should be eligible who had been admitted as immigrants, it would have so said. Probably it would have coupled that statement with the explanation that they meant that no Chinese now in the United States could ever be admitted to citizenship, because I think, as a practical matter, that probably there then were no Chinese in the United States who were admitted as immigrants for the purpose of future naturalization. But if Congress had had the particular technical theory in mind that is rather hinted at by the argument of the Immigration and Naturalization Service, that no Chinese who entered the United States after 1924 and before 1943 could be eligible for citizenship, then I think Congress would have said just that. I recognize that a strained construction of the letter of the Act of 1924 and of the letter of the Act of 1943 might seem to give some legalistic foundation for the objection; but the spirit of the law is entirely contrary to such objection. The honor and respect that this nation has always declared for treaty obligations compel a different approach than a narrow, strained, legalistic adherence to the mere letter divorced from the spirit of the Act. From the standpoint of public policy, of course, it is difficult to sustain the position that one who entered the United States after 1943 is more to be preferred for citizenship than one who came here and has been here since 1927. From the standpoint of public policy, a girl who came here as a minor in 1927 as the daughter of a Chinese merchant who came long before under the Treaty and who married an American citizen in 1941, is certainly as promising material for good citizenship as one who came to the United States yesterday as an immigrant." 70 F.Supp. 493–494.

In this connection, the Government calls attention to certain language in the Report of the House Committee on Immigration and Naturalization with respect to the Act of December 17, 1943, supra, making Chinese eligible for United States citizenship. It is noted that the Government cited this language to Judge Black in the Chi Yan Cham Louie case, supra. Referring to the Report, Judge Black said:

" * * * but as I read what that committee says, it is certainly as capable of construction in favor of the admissibility of the petitioner as it is against her. In fact, to me, it seems to be much more persuasive in support of the petitioner's contention than it is in support of the contention of the Immigration and Naturalization Service. In that report it is said: 'The number of Chinese who will actually be made eligible for naturalization under this section is negligible. There are approximately forty-five thousand alien Chinese persons in the United States (continental, territorial and insular). However, a large number of these have never been admitted to the United States for lawful permanent residence, which is a condition precedent to naturalization, and, therefore, many of this number would not be eligible for naturalization, not because of racial disability, but because they cannot meet existing statutory requirements of law.' It should be particularly noted that the Congressional Committee said, 'However, a large number of these Chinese have never been admitted to the United States for lawful permanent residence,' but this petitioner, unquestionably, in 1927 was admitted to the United States for lawful permanent residence. She, therefore, is not excluded." 70 F.Supp. at page 494.

Judge Black's decision was cited with approval in a per curiam opinion of the Ninth Circuit in Yung Poy case, supra.

The fallacy of the Government's position in these cases is made more apparent by its concession that none of these petitioners is illegally in this country and that none of them is subject to deportation. If they are legally here and cannot be deported, it would seem that they are here for permanent residence.

The Government also cites In re Pezzi, D.C.Cal., 29 F.2d 999, and Subhi Mustafa Sadi, v. United States, 2 Cir., 48 F.2d 1040, but these cases were distinguished on their facts in Re Jow Gin, supra, and, while the facts in the Jow Gin case are distinguishable from the facts in the instant cases, the tenor of the opinion of the Seventh Circuit in that case is more favorable to the petitioners than it is to the Government.

The Government's objections to the naturalization of the petitioners are overruled.