**In re JOW GIN.**

**JOW GIN v. UNITED STATES.**

**No. 9748.**

United States Court of Appeals Seventh Circuit.

June 9, 1949.

Otto Kerner, Jr., U. S. Atty., John P. Lulinski, Asst. U. S. Atty., Chicago, Ill., Edmund J. Johnson, Asst. U. S. Atty., Dewey G. Hutchinson, Naturalization Examiner, Chicago, Ill., for appellant.

Helen B. Jerry, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and MINTON and DUFFY, Circuit Judges.

MAJOR, Chief Judge.

This is an appeal from an order, entered June 8, 1948, allowing appellee's Petition for Naturalization over the objection of the United States Naturalization Examiner.

Petitioner was born on February 17, 1921, in Hong Kong, China, and entered the United States at the port of Seattle, Washington, on August 9, 1930, as the minor son of a merchant. He filed his Declaration of Intention to become a citizen of the United States on June 24, 1944, in the United States District Court for the Northern District of Illinois. On August 8, 1946, he filed his Petition for Naturalization in the same court.

The matter was referred to Patrick J. Dillon, who conducted preliminary hearings upon the petition, as provided by Title 8 U.S.C.A. § 733. (Sections hereinafter referred to will be to the same title and vol-

ume unless otherwise noted.) On June 8, 1948, the Immigration and Naturalization Service filed with the court its recommendation that the petition be denied. On the same date, the matter came on for final hearing, pursuant to Sec. 734. The court had before it at that time only the Petition for Naturalization and the recommendation that it be denied. No demand was made by the petitioner, and the court did not exercise its discretion to require "the examination of the petitioner and witnesses under oath before the court and in the presence of the court," as provided in § 734(b), where a preliminary hearing has been conducted by a designated examiner under Sec. 733 (a). In a colloquy between the court and counsel, it appears that the defendant (government) moved for the entry of findings of fact by the court and for the dismissal of the petition. The colloquy also indicates that the court denied or ignored the request of the government to offer evidence in support of its motion to dismiss, the exact nature of such evidence not being revealed.

The contested issues upon which the government relies for reversal are (1) that the court erred in not specifically finding the facts on which it predicated its order and judgment and in not separately stating its conclusions of law, as required by Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.; (2) that the court erred in not sustaining the motion to dismiss because a valid certificate, showing the date, place and manner of petitioner's arrival in the United States, was not filed with the petition and that petitioner did not establish exemptions from such requirement; (3) that the court erred in not sustaining the motion to dismiss because a valid Declaration of Intention was not filed with the Petition for Naturalization and that petitioner did not establish exemptions from such requirement, and (4) that the court erred in allowing the petition because the petitioner was never admitted into the United States of America for permanent residence and was admitted only temporarily, as a non-immigrant alien.

The contention that the court erred in not specifically stating its findings of fact and conclusions of law in compliance with Rule 52(a) of the Federal Rules of Civil Procedure is predicated upon the holding of this court in Application of Murra, 166 F.2d 605. Such contention misapprehends our opinion in that case. More than that, it fails to take into consideration and to give effect to what we think is the plain and unambiguous procedure prescribed by Secs. 733 and 734 relative to a hearing on a Petition for Naturalization.

Insofar as procedure is concerned, the Murra case and the one now before us are similar in one respect, that is, that in both the petition was referred to an Examiner to conduct a preliminary hearing under Sec. 733(a), which was done and a recommendation made that the petition be denied. There the similarity ends. In the Murra case, upon a final hearing under Sec. 734, the court heard the testimony of witnesses in open court, which it was authorized to do in its discretion and which it was required to do upon demand of the petitioner. Under those circumstances we said 166 F.2d page 607:

"Thus, the hearing before the court is not for the purpose of reviewing the recommendations of the Examiner; it is a hearing de novo and it is obvious that the court must decide the issues upon the testimony which it hears, and that neither the testimony heard by the Examiner, his findings, nor his recommendation are of any consequence."

And we held Rule 52(a) of the Federal Rules of Civil Procedure applicable to such a situation.

On the other hand, in the instant case, no demand was made by petitioner that the witnesses be heard "before the court and in the presence of the court." Neither did the court exercise its discretion to order such a hearing. Thus, no order having been made for an examination of witnesses in open court, either upon the demand of the petitioner or upon the court's own volition, there was nothing before the court other than the petition and the recommendation that it be denied. The court having heard no testimony there was nothing upon which to predicate findings of fact. The government comes close to con-

ceding this point in its reply brief, wherein it states:

"On the state of the record in this appeal, it is suggested that this appeal should be reversed and remanded with directions to hold a hearing on petitioner's application for citizenship. This suggestion is made since there is no evidence below which would warrant a reversal solely for the purpose of making findings of fact and stating conclusions of law."

■ Even though we were inclined to comply with this suggestion, we seriously doubt our authority to give such a direction for the reasons, as already shown, that the examination of witnesses in open court, where a Petition for Naturalization has been referred to an Examiner, is, in the absence of a demand by the petitioner, a matter solely within the discretion of the court.

This brings us to a consideration of the statutory procedure where a designated Examiner has conducted a preliminary hearing and where the court has not ordered an examination of witnesses in open court. Sec. 733(a), entitled "Hearing of petitions; preliminary hearings," provides that the Commissioner shall designate members of the Service to conduct preliminary hearings upon Petitions for Naturalization to any Naturalization Court and "to make findings and recommendations thereon to such court." The Examiner designated for such purpose is authorized "to take testimony concerning any matter touching or in any way affecting the admissibility of any petitioner for naturalization, to subpena witnesses, and to administer oaths, including the oath of the petitioner to the petition for naturalization and the oath of petitioner's witnesses." Par. (b) of the same section provides, "The findings * * * shall be submitted to the court at the final hearing * * * with a recommendation that the petition be granted, or denied, or continued, with the reasons therefor. Such findings and recommendations shall be * * * signed by the designated examiner."

■ Insofar as is evidenced by any reported decision, the courts appear to have given scant consideration to the importance of the provision which Congress has made for a preliminary hearing by an Examiner. Concerning the duty of an Examiner under this provision, the court in Petition of Kelly, D.C., 61 F.Supp. 467, stated, "The practice of making recommendations without calling to the attention of the court the underlying facts, or to conceal questions of law, is improper. Since the process of admission to citizenship leads to a judgment, the court should have the opportunity and the duty of applying the law to the facts."

In Gaglione v. United States, 1 Cir., 35 F.2d 496, the court considered a situation wherein the appellant had been convicted of perjury alleged and found to have been committed at a preliminary hearing before a Naturalization Examiner. The court, after reviewing the statutory provisions relative to such preliminary hearing, stated 35 F.2d at page 497:

"It was the duty of the examiner to take all evidence pertinent to the proper performance of his duty in making a recommendation to the court concerning the fitness of the applicant for naturalization, including his moral character. His function was closely analogous to that of a master in equity."

The dearth of judicial interpretation as to the purpose of the preliminary hearing, as well as the duty imposed upon the Examiner, is not strange in view of a statute so plain in its terms as hardly to be susceptible of misunderstanding. Having authorized the Examiner to take testimony, what could be more logical than the requirement that findings and recommendations thereon be made to the court? And how could a court attach any weight to recommendations in the absence of findings upon which they are predicated? It is required that they be "signed by the designated examiner," so it is obvious that the statute contemplates that the findings and recommendations be in writing.

■ Sec. 734(a) provides that "every final hearing" shall be had in open court and that at such final hearing "the witnesses shall be examined under oath before the court and in the presence of the court", except that this requirement is dispensed with

by Par. (b) of the same section "in any case where a designated examiner has conducted the preliminary hearing authorized by subsection (a) of section 733." It is further provided, however, in the same paragraph that even though a designated examiner has conducted the preliminary hearing, "the court may, in its discretion, and shall, upon demand of the petitioner, require the examination of the petitioner and the witnesses under oath before the court and in the presence of the court." As we said in the Murra case, 166 F.2d at page 606:

"It thus appears that there are two ways in which a petition for naturalization may be disposed of: (1) the court may act upon the report of an Examiner who has conducted a preliminary hearing and who is required to make findings upon which his recommendation is predicated; and (2) a hearing in open court where the witnesses must be examined before the court and in the presence of the court."

In cases of the former class, the statute contemplates that the court act upon the findings and recommendations of the Examiner and is not required to make findings of his own, while in cases of the latter class, the court hears witnesses, examined in open court, and must make findings as to the facts thus disclosed. As already shown, if either the petitioner or the court is not satisfied with the findings of the Examiner, a hearing may be ordered in the discretion of the court and must be ordered upon demand of the petitioner. The language which Congress has employed is, in our judgment, not reasonably susceptible of a different interpretation.

██ Our observation leads us to think that the procedure which Congress has provided relative to a Petition for Naturalization has in many instances been ignored. We suspect that such is the case because most petitioners appear in court without counsel. Of course, it is true that naturalization is a privilege and not a right, but it also must be recognized that "there is a statutory right in the alien to submit his petition and evidence to a court, to have that tribunal pass upon them, and, if the requisite facts are established, to receive the certificate." Tutun v. United States, 270 U.S. 568, 578, 46 S.Ct. 425, 427, 70 L.Ed. 738. More than that, such a petitioner, like any other suitor, is entitled to a fair hearing in the manner and in accordance with the procedure which Congress has prescribed.

Returning to the matter before us, the Examiner in his recommendation recognized, as the statute contemplates, that he was duly designated "to conduct preliminary hearings * * * and to make findings and recommendations thereon," and after reciting that he had examined the petitioner and his witnesses made recommendations that the petition be denied without stating any findings of fact as a basis therefor. His recommendations for denial are (1) that there was not filed with the petition a valid certificate showing the date, place and manner of petitioner's arrival in the United States, and (2) that a valid Declaration of Intention was not filed with the Petition for Naturalization. No reason is specified, either factual or legal, as to why either the certificate or declaration should be treated as not valid. For aught that appears, any one of a score or more reasons might be assigned as a basis for the recommendation which was made.

From the contested issues as stated by the government it appears that the contention that the certificate and declaration are invalid rests solely on the premise that petitioner was not admitted to the United States for permanent residence. That this is the issue is indicated by the government's brief, wherein it is stated:

"The principal issue involved in this appeal is the nature of appellee's status in the United States. From the date he was admitted to the United States at Seattle, Washington on August 9, 1930 to the date of filing his petition for naturalization on August 8, 1946 and to the date of the final hearing on his petition for naturalization on June 8, 1948, was the appellee ever admitted into the United States for permanent residence, or did he ever acquire residence in the United States of a permanent nature as contemplated by the Nationality Act of 1940?"

In his Petition for Naturalization, on the form required by Sec. 732, petitioner stated,

"My lawful entry for permanent residence in the United States was at Seattle, Washington under the name of Gin Jow on August 9, 1930 on the SS President Jackson as shown by the certificate of my arrival attached to this petition," and "Attached hereto and made a part of this, my petition for naturalization, are my declaration of intention to become a citizen of the United States * * *, a certificate of arrival from the Immigration and Naturalization Service of my said lawful entry into the United States for permanent residence * * *." Petitioner's Declaration of Intention contains a similar statement as to his "lawful entry for permanent residence." Attached to his petition is a "Certificate of Arrival," issued May 27, 1944, by the Immigration and Naturalization Service evidently under the authority contained in Sec. 729. The certificate states:

"I hereby certify that the immigration records show that the alien named below arrived at the port, on the date, and in the manner shown, and was lawfully admitted to the United States of America for permanent residence as Minor Son of a Merchant.

"Name: Gin Jow now known as David Jow Gin

"Port of entry: Seattle, Washington

"Date: August 9, 1930

"Manner of arrival: SS President Jackson

"I further certify that this certificate of arrival is issued under authority of, and in conformity with, the provisions of the Nationality Act of 1940, solely for the use of the alien herein named and only for naturalization purposes."

As the certificate indicates, the information contained thereon was taken from immigration records which the Commissioner under Sec. 728 is required to keep. Par. (c) of this section provides, "For the purposes of the immigration laws and naturalization laws an alien, in respect of whom a record of registry has been made as authorized by this section, shall be deemed to have been lawfully admitted to the United States for permanent residence as of the date of such alien's entry."

That a Certificate of Arrival predicated upon a registry made at the time of an alien's entrance into this country showing lawful entrance for permanent residence is an indispensable requisite for admission to citizenship is plainly shown by the authorities. United States v. Ness, 245 U.S. 319, 324, 38 S.Ct. 118, 62 L.Ed. 321; Kaplan v. Tod, 267 U.S. 228, 230, 45 S.Ct. 257, 69 L.Ed. 585; Zartarian v. Billings, 204 U.S. 170, 175, 27 S.Ct. 182, 51 L.Ed. 428. In the instant matter the certificate shows that the petitioner "was lawfully admitted * * * for permanent residence." Moreover, it recites that it was issued "solely for the use of the alien herein named and only for naturalization purposes." The basis for the government's attack upon this Certificate of Arrival is not plain, although presumably it is that petitioner was admitted for permanent residence as "Minor Son of a Merchant."

It would unduly prolong this opinion, and more important, would serve no useful purpose, to relate and discuss the many complex and confusing provisions contained in the Immigration Act, both of the past and as presently constituted. The government discusses numerous statutory as well as treaty provisions without pointing out any provision which in our judgment impairs the right of an alien lawfully admitted to this country for permanent residence to become a naturalized citizen, irrespective of whether his father was classified as a merchant or something else. More than that, no case cited by the government and none which we are able to find has held that a person lawfully admitted for permanent residence is not entitled to be naturalized.

The case most strongly relied upon by the government is In re Pezzi, 29 F.2d 999, (a District Court case decided December 31, 1928), wherein the court denied the Petition for Naturalization because of the failure to show that the petitioner was admitted for permanent residence. The decision was based, however, upon a record of entry which contained the notation that petitioner "intended to remain in the United States four months as a 'temporary visitor.'" Another case relied upon by the government equally beside the point is that of Subhi Mustafa Sadi v. United States, 2 Cir., 48

F.2d 1040. In that case the record of entry disclosed that petitioner was "admitted as a bonafide student for a period of two years." As a basis for its decision denying the petition, the court in referring to the petitioner's record of entry stated, 48 F.2d at page 1041, "It did not show that he was admitted for permanent residence, and, with the records * * * as they now stand he cannot prove that he was," and "he could not be admitted to citizenship on his pending petition, since he could not show that he had in fact been admitted for permanent residence as the statute requires." These two cases not only fail to support the government's opposition in the instant matter but they accentuate the point that an alien is not eligible for naturalization without a Certificate of Arrival showing lawful entry for permanent residence.

On the other hand, two courts have held that where a Chinese merchant was admitted to the United States prior to 1924, pursuant to the Treaty of 1880, members of his family coming after 1924 were entitled to admission for permanent residence. In re Wong Choon Hoi, D.C., 71 F.Supp. 160, appeal dismissed, Carmichael v. Wong Choon Hoi, 9 Cir., 164 F.2d 696; In re Chi Yan Cham Louie, D.C., 70 F.Supp. 493, appeal dismissed, Bonham v. Chi Yan Cham Louie, 9 Cir., 166 F.2d 15. The government contends that these authorities are of no benefit to petitioner because the record fails to disclose that petitioner's father was admitted to the United States prior to 1924. The argument follows that his admission subsequent to the Act of May 26, 1924, 8 U.S. C.A. § 203(6) could only have been for temporary and not for permanent residence. The government is in a poor position to advance this contention in view of the record. If the date of the arrival of petitioner's father was controlling or even material, the Examiner had an opportunity, in fact the duty, to apprise the court of such fact by making a finding as to the date of such arrival. In the absence of such a finding, the court had a right to infer that the date of arrival was immaterial or, if it was material, that it was prior to 1924. This inference is strengthened from the fact that the Certificate of Arrival shows petitioner's admission for permanent residence.

This, according to the government's argument, could have been true only in case his father had been admitted prior to 1924. Accordingly, if the father's admission had been subsequent to 1924, petitioner's admission would have been for temporary and not for permanent residence.

By Sec. 703(a) (3), as amended December 1943, 8 U.S.C.A. § 703(a) (3), "Chinese persons and persons of Chinese descent" are given the right to become naturalized citizens, and if such a person has been lawfully admitted to this country for permanent residence he is presently entitled to such right. While we must admit the question is not free from doubt, we are of the view that petitioner is such a person and that the court properly admitted him to citizenship.

The order appealed from is affirmed.