**Petition for MOY JEUNG DUN.**

No. 5475.

United States District Court
D. New Jersey.

Nov. 26, 1951.

Marvin M. Neuman, Philadelphia, Pa., for petitioner.

George G. Barrett, Designated Naturalization Examiner, opposed.

MADDEN, District Judge.

This matter comes before the Court on a Petition for Naturalization of one, Moy Jeung Dun, a Chinese national who has been in this country since 1928. There are recommendations against granting naturalization by the Department of Immigration and Naturalization and the Naturalization Examiner.

The facts briefly stated are these. The petitioner came to this country on February 23, 1928 and was admitted by a board of special inquiry under Section 3(6) of the Immigration Act of 1924, 8 U.S.C.A. § 203 (6), as the minor son of a Chinese Treaty merchant. The father had been in this country since 1907 and had been admitted to the United States for permanent residence in accordance with the treaty between the United States of America and China of 1880. The examiner argues that admission under such treaty and the Act of 1924 was not for permanent residence and, therefore, the petitioner not coming here for permanent residence but merely for either visitation or commercial privileges extended under the treaty cannot be admitted to citizenship unless his entry is solely for the purpose of immigration.

In the Court's estimation, in order to properly dispose of the matter, it will be necessary to deal somewhat fully with the history of the various Nationality Acts, together with the treaty in existence at the time of the father's entry, in order to bring us down to date and arrive at what we think is the intention of Congress by reason of its most recent enactment of legislation upon the subject.

We come firstly to the Treaty between the United States and China entered into on November 17, 1880, found in Volume 22 of the Statutes at Large at page 826, Article I and Article II thereof being set forth in the footnote [1].

This was followed by what was commonly referred to as the Chinese Exclusion Act of 1882, which is found at 22 Statutes, page 59,[2] and is set forth in the footnotes hereof

---

1. Article I—"Whenever in the opinion of the Government of the United States, the coming of Chinese laborers to the United States, or their residence therein, affects or threatens to affect the interests of that country, or to endanger the good order of the said country or of any locality within the territory thereof, the Government of China agrees that the Government of the United States may regulate, limit, or suspend such coming or residence, but may not absolutely prohibit it. The limitation or suspension shall be reasonable and shall apply only to Chinese who may go to the United States as laborers, other classes not being included in the limitations. Legislation taken in regard to Chinese laborers will be of such a character only as is necessary to enforce the regulation, limitation, or suspension of immigration, and immigrants shall not be subject to personal maltreatment or abuse."

Article II—"Chinese subjects, whether proceeding to the United States as teachers, students, merchants or from curiosity, together with their body and household servants, and Chinese laborers who are now in the United States shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation."

2. Title 8 U.S.C.A. § 263 (now repealed by Chapter 344 Laws of 1943). "The coming of Chinese laborers to the United States is suspended, and it shall not be lawful for any Chinese laborer to come from any foreign port or place, or having so come to remain within the United States." May 6, 1882, c. 126, par. 1, 22 Statutes 59.

and which in effect forbade Chinese laborers from coming to this country or having any rights therein.

It can be seen from both the Treaty and the Exclusion Act that Congress was attempting to find that difficult middle ground of encouraging trade and tourists with the nation of China, and at the same time preventing immigration of laborers whose days' hire was so cheap that it would be ruinous to the hard won position of the American laboring man.

This was the status of the law, through treaty and legislative enactment, when petitioner's father arrived in 1907 and from whom petitioner derived his right of entry and residence.

Thereafter, Congress saw fit to adopt what is known as the Immigration Act of 1924, Volume 43 of the Statutes at Large, page 153, and the pertinent sections thereof are set forth in the footnotes hereof [3].

It can be seen from this particular Act that specific provision was made that immigrants would not be considered as such if they came to this country under certain treaties existing between this country and other nations, and likewise under Section 28 (c) of this Act, the petitioner here was specifically disqualified from naturalization.

While the right for petitioner to enter existed under the Treaty of 1880 (supra) and was preserved under the Act of 1924 the right of naturalization, as has been demonstrated, was expressly excluded.

The next important step by Congress was the Nationality Act of 1940 known as Chapter 876 of the Laws of 1940 found at 54 Statutes 1137 and the pertinent sections thereof are set forth in the footnotes hereof [4]. It will also be observed that in

---

3. Act of 1924, 8 U.S.C.A. §§ 203, 207, 224 (c). Section 3. "When used in this Act the term 'immigrant' means any alien departing from any place outside the United States destined for the United States, except * * * (6) an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provisions of a present existing treaty of commerce and navigation."

Section 7. "Every immigrant applying for an immigration visa shall make application therefor in duplicate in such form as shall be by regulations prescribed * * *.

"(d) In the application the immigrant shall also state (to such extent as shall be by regulations prescribed) whether or not he is a member of each class of individuals excluded from admission to the United States under the immigration laws, and such classes shall be stated on the blank in such form as shall be by regulations prescribed, and the immigrant shall answer separately as to each class."

Section 28. "As used in this Act * * *

"(c) The term 'ineligible to citizenship,' when used in reference to any individual, includes an individual who is debarred from becoming a citizen of the United States under section 2169 of the Revised Statutes, or under section 14 of the Act entitled 'An Act to execute certain treaty stipulations relating to Chinese,' approved May 6, 1882, or under section 1996, 1997 or 1998 of the Revised Statutes, as amended, or under section 2 of the Act entitled 'An Act to authorize the President to increase temporarily the Military Establishment of the United States,' approved May 18, 1917, as amended, or under law amendatory of, supplementary to, or in substitution for, any of such sections".

4. Nationality Act of 1940. Chapter 876, 54 Statutes 1137. Section 204, 8 U.S. C.A. § 604. "Unless otherwise provided in section 201, the following shall be nationals, but not citizens, of the United States at birth: * * * "(b) A person born outside the United States and its outlying possessions of parents both of whom are nationals, but not citizens, of the United States, and have resided in the United States or one of its outlying possessions prior to the birth of such person". Section 303, 8 U.S.C.A. § 703. "The right to become a naturalized citizen under the provisions of this Act shall extend only to white persons, persons of African nativity or descent, and descendants of races indigenous to the Western Hemisphere: Provided, That nothing in this section shall prevent the naturalization of native-born Filipinos having the honorable service in the United States Army, Navy, Marine Corps, or Coast Guard as specified in section 324, nor of former citizens of the United States who are otherwise eligible to naturalization under the provisions of section 317." Section 410, 8 U.S.C.A. § 810. "Nothing in this

Section 303 of this Act, 8 U.S.C.A. § 703, that the pre-existing disqualification from citizenship of the Chinese national remains, not by specific name but by exclusion from those qualified or eligible to be naturalized.

The next step in the legislative history came in 1943.

I think it appropriate to remark at this time that in 1943, we must bear in mind, that this nation was at war—at war with the people of Germany, Italy and their allies in the European theater, and Japan and her allies or subjugated countries in the Pacific or Asiatic theater and with the world in that state and with the Chinese nation considered an ally of this country Congress legislated on this subject. It, by its Act, completely repealed the Chinese Exclusion Act which had stood on our books since 1882; it established a quota of 100 Chinese to enter the country per year as immigrants for the purpose of permanent residence and, if desired, naturalization. And in Chapter 334 of the Laws of 1943, found at 57 Statutes 601, it not only repealed the Chinese Exclusion Act but it specifically provided by Section 303 for the naturalization of "Chinese persons or persons of Chinese descent" [5].

■ There is no mention in that Act whatsoever that the right to be naturalized exists only in those who thereafter come to this country under the provisions of that Act. It would seem logical to the Court that with Congress specifically eliminating the statutory exclusion of Chinese from citizenship, that had been in existence for such a long period of time, that if it desired the right of naturalization to flow to only those who came to this country subsequent to the enactment of the law it would have said so specifically and, as was pointed out by Judge Black, in the United States District Court for the Western District of Washington, in the matter of Chi Yan

Cham Louie found at 70 F.Supp. 493 at page 494, when he was speaking of the legislative history of the Act of 1943 said: " * * * In that report it is said: 'The number of Chinese who will actually be made eligible for naturalization under this section is negligible. There are approximately forty-five thousand alien Chinese persons in the United States (continental, territorial and insular). However, a large number of these have never been admitted to the United States for lawful permanent residence, which is a condition precedent to naturalization, * * * not because of racial disability, but because they cannot meet existing statutory requirements of law.' "

Judge Black likewise observed: "If Congress had intended only those persons should be eligible who had been admitted as immigrants, it would have so said. Probably it would have coupled that statement with the explanation that they meant that no Chinese now in the United States could ever be admitted to citizenship, because I think, as a practical matter, that probably there then were no Chinese in the United States who were admitted as immigrants for the purpose of future naturalization. But if Congress had had the particular technical theory in mind that is rather hinted at by the argument of the Immigration and Naturalization Service, that no Chinese who entered the United States after 1924 and before 1943 could be eligible for citizenship, then I think Congress would have said just that."

In that case the facts were somewhat similar. The petitioner in that matter having come in 1927, subsequent to the passage of the 1924 Act, and being the daughter of a chinaman who came as a merchant under the same treaty.

It was decided in 1925 by the United States Supreme Court in the matter of Cheung Sum Shee v. Nagle found at 268

Act shall be applied in contravention of the provisions of any treaty or convention to which the United States is a party upon the date of the approval of this Act."

5. Section 303. Amended by Chapter 344, Laws of 1943, to read as follows: "The

right to become a naturalized citizen under the provisions of this Act shall extend only to white persons, persons of African nativity or descent, descendants of races indigenous to the Western Hemisphere, and Chinese persons or persons of Chinese descent."

U.S. 336, 45 S.Ct. 539, 69 L.Ed. 985, that the wife of a treaty merchant, who had applied for admission to the United States after the effective date of the 1924 Act, that she was admitted to this country for permanent residence. And in the matter of Haff v. Yung Poy, 9 Cir., 68 F.2d 203, the Court refused to deport Yung Poy who had entered this country after the Immigration Act of 1924, holding that under the decision in the Nagle case, supra, that he was here for permanent residence and is entitled to such.

The Yung Poy decision was affirmed by the Ninth Circuit in a per curiam opinion, which likewise cited other authorities quoted therein.

■ If, therefore, the petitioner is here for permanent residence and cannot be deported and in 1943 Congress removed the disqualifications from citizenship, by its very words, how then can the Immigration and Naturalization Service now argue that he is ineligible for citizenship, all other standards, qualifications and requirements being met.

To withhold the legislative privilege from petitioner in the light of this history, would be but to relegate petitioner, and others similarly circumstanced, to a legalistic "no-man's-land", indeed, in a virtual "limbo" contrary to what this Court deems to be the legislative intention of Congress in this regard, and assume an unrealistic position contravening the general policy of equality, fairness and magnanimity continuously demonstrated by the American people.

This view was also expressed in different tone by Chief Judge Major of the United States Court of Appeals for the Seventh Circuit in the matter of Jow Gin v. United States, found at 175 F.2d 299; and also in Ex parte Mohriez, D.C., 54 F.Supp. 941.

Logical reading of the Congressional Enactments leads to the conclusion that Congress intended to remove the prohibition of naturalization from all 'Chinese by their 1943 legislation conditioned, it seems to the Court, upon the petitioner being in the country lawfully. This opinion is bolstered by the decisions of equal and superior tribunals in this respect and quoted herein.

For these reasons the Court hereby determines that the petitioner herein, as such, is not disqualified from naturalization by reason of his ancestry descent. If, upon proper examination, all other conditions and qualifications are met by the petitioner, he will be admitted to naturalization.

The attorneys herein are directed to apply to the Court for a date for hearing.