In the Matter of the Naturalization Petition of LEE SUI LUM.

United States District Court
S. D. New York.
June 2, 1955.

Andrew Reiner, New York City, for petitioner, Edward L. Dubroff, Brooklyn, N. Y., of counsel.

William Kenville, New York City, Naturalization Examiner.

DAWSON, District Judge.

The Immigration and Naturalization Service has recommended that this petition for naturalization be denied on the ground that petitioner cannot establish lawful admission to the United States for permanent residence, as made a prerequisite for naturalization by Section 329 of the Nationality Act of 1940, 54 Stat. 1152, as amended by Section 27 of the Internal Security Act of 1950, 64 Stat. 987.[1]

Petitioner filed his petition for naturalization on May 9, 1951 under the provisions of Section 310(b) of the Nationality Act of 1940, 54 Stat. 1144.[2] The Naturalization Examiner found, and there is no dispute as to the facts, that petitioner entered the United States at San Francisco, California, on October 31, 1913, at which time he was duly inspected by an Immigration Officer of the United States and admitted as the son of a Chinese Government official; that petitioner had not entered the United States at any time, or in any other capacity, other than on October 31, 1913.

The issue is whether this admission was one for permanent residence within the meaning of the Statute.

Prior to 1943, Chinese were ineligible for naturalization as citizens of the United States. In that year, however, the "Chinese Exclusion Act" of 1882, 22 Stat. 59, was repealed by Chapter 344 of the Laws of 1943, 57 Stat. 600. At the same time, Section 303 of the Nationality Act of 1940, 54 Stat. 1140 [3] was amended to permit the naturalization of Chinese. Subsequent to 1943, therefore, Chinese already in the United States who had the necessary permanent residence to qualify could become citizens of the United States. In the instant situation, the Immigration and Naturalization Service contends that petitioner is not within a class admitted for permanent residence because

(a) The Treaty of Commerce and Navigation of Nov. 17, 1880, between the United States and China, 22 Stat. 826 *, does not designate government officials as a class that shall be admitted, and

(b) Petitioner's father was within that special class known as diplomatic or consular officials that, based upon comity among nations, is granted immunity from immigration inspection.

■ The second point can be met with dispatch, and I will consider it first. There is nothing in the record before me to indicate that petitioner's father was an accredited diplomatic or consular official subject to the attendant privileges and immunities. Rather, the Naturalization Examiner found that petitioner's father was a Chinese Government official and that petitioner was duly inspected upon arrival. Petitioner stated upon

1. Now Immigration and Nationality Act of 1952, § 318, 8 U.S.C.A. § 1429.

2. Now Immigration and Nationality Act of 1952, § 319, 8 U.S.C.A. § 1430.

3. Now Immigration and Nationality Act of 1952, § 311, 8 U.S.C.A. § 1422.

"Article II

* "Chinese subjects, whether proceeding to the United States as teachers, students, merchants or from curiosity, together with their body and household servants, and Chinese laborers who are now in the United States shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation."

oath to me that his father was not a diplomatic or consular official, but was a government official in China.

The first point mentioned above has a bit more substance. Article II of the Treaty of 1880, which I have set forth in the footnote below, states that Chinese subjects could go to the United States as teachers, students, merchants or from curiosity and shall be accorded all the rights, privileges, immunities and exemptions which are accorded to the citizens and subjects of the most favored nation. It is true, as the Immigration Examiner has pointed out, that this Section mentions nothing about government officials. It is to be noted that Article II of the Treaty of 1880 referred to above is not inclusive as to the categories that it sets up, for any Chinese subject could fall within the group designated as those seeking to go to the United States from curiosity.

█ The cases leave no doubt that under the terms of this Treaty and the subsequent legislation, which I will hereinafter refer to, Chinese subjects who were admitted to the United States as merchants, the so-called "Treaty Traders", were lawfully admitted to the United States for permanent residence so as to establish their eligibility for naturalization, and this so applies to children of the "Treaty Traders" who entered therewith. United States v. Lin Liu, 2 Cir., 1951, 190 F.2d 400; United States v. Lee Cheu Sing, 10 Cir., 1951, 189 F.2d 534; Petition of Moy Jeung Dun, D.C.N.J. 1951, 101 F.Supp. 203; In the Matter of Chi Yan Cham Louie, D.C.Wash.1946, 70 F.Supp. 493, 494.

Article IV of the Treaty of 1880, 22 Stat. 827, states, in substance, that the United States Government contemplates adopting legislative measures in accordance with the Treaty. A review of the legislation and Treaties subsequent to the Treaty of 1880 clearly shows that it was the intent of Congress to treat Chinese government officials and their children no differently from "Treaty Traders".

Section 2 of the Act of September 13, 1888, 25 Stat. 476, in referring to those classes of Chinese who shall be permitted to enter the United States, in addition to setting forth the merchant class, specifically refers to officials. That the officials so indicated in Section 2 were not to be confused with diplomatic or consular officials is clearly shown by a comparison of Section 2 of the 1888 Act with Section 3 of that Act.

The Convention between the United States and China dated March 17, 1894, 28 Stat. 1210, Article III, provides:

"The provisions of this Convention shall not affect the right at present enjoyed of Chinese subjects, being officials, teachers, students, merchants or travellers for curiosity or pleasure, but not laborers, of coming to the United States and residing therein."

That these rights continue unabated is shown by Section 43 of the Immigration Act of February 20, 1907, 34 Stat. 898, 911, which stated that this Act shall not be "construed to repeal, alter, or amend existing laws relating to the immigration or exclusion of Chinese persons * * *."

The existing laws referred to in the 1907 Act included the Act of April 29, 1902, 32 Stat. 176, which provided "that all laws now in force prohibiting and regulating the coming of Chinese persons, and persons of Chinese descent, into the United States and the residence of such persons therein * * * be, and the same are hereby, re-enacted, extended, and continued so far as the same are not inconsistent with treaty obligations, until otherwise provided by law * * *."

This Act continued in effect until the 1943 Act mentioned above, 57 Stat. 600, granting the right of naturalization to Chinese subjects, was enacted.

█ From this brief summary of the applicable legislation, it can be seen that it was the intent of Congress to admit government officials and their families in pari materia with other groups which the Courts have held are eligible for naturalization. See opinions cited supra.

Petition granted.